I'm Judge Gould and I'm presiding today, and I'm delighted to be sitting with Judge Graber who is appearing remotely, so we have the video set up. Yes, I see it there. Katie? My stand is blocking my view of Judge Graber. It's on the right. On this side? Just pull it over an inch to the right. Under just one inch or so. Okay, good. We have two cases for argument calendar, but before we get to that, Katie, pull this closer. You need to move the base of the mic over. Bring that stand closer. Closer. Okay, so before we get started with the argument, we have several cases submitted on the briefs, so for the record, I'm going to comment. We have Ruiz-Martínez v. Garland, which is number, I think it's 30. I can't quite read this, Katie. Bring this closer. It happens with failing eyesight, I guess. 20. 70. 73028. And also on the briefs is Benton Court v. Garland, which is 12. 22. 1618. And also on the briefs is Abrahams v. Kitchikazi, and that's number 22. 35. 409. And also on the briefs is Alexander v. Kitchikazi, and that one is number 22. 357. 37. So that gets us through our submitted cases. We have two cases to be argued. The first one is Monjabat v. Garland. It's set for 15 minutes per side. So for the petitioner, we have, I can't quite, Danielle, I'll let Danielle introduce herself. Thank you, Your Honors, and may it please the Court. Danielle Fewer for Petitioner Gerard Paul Monjabat. I'd like to reserve five minutes for rebuttal. Please proceed. This matter distills to a single question. Whether Mr. Monjabat's right to counsel was violated when he was denied a continuance to secure counsel for his immigration case, Justice's efforts against all odds from an often locked down detention facility during the worst of the COVID pandemic were finally bearing fruit. What is our standard of review? There seems to be a little bit of tension in our cases as to whether we review this question for an abuse of discretion because it's denial of a continuance, or whether we review it de novo because it deals with the statutory right to counsel. Thank you, Your Honor. I think at the end of the day, these cases are really saying the same thing, which is that the IJ has discretion within reason to decide whether to grant or deny continuance. But that discretion is cabined by the immigrant's competing right to counsel. So the real question is whether, under the facts, petitioner's right to counsel was violated, or put differently, whether he was denied a reasonable time to find counsel. And that's a question this Court reviews de novo. So it's really the intersection of these two counsels layered within the case. If I could ask you a question, counsel. If we review the right to counsel issue de novo, and normally we review a denial of continuance for abuse of discretion, isn't it still true that a denial of the right to counsel would per se be an abuse of discretion? That is correct, Your Honor. A denial of the right to counsel would indeed per se be an abuse of discretion by the immigration judge. So there's no analysis of whether there's prejudice, is what you're essentially arguing? That is also correct, that under this Court's precedence, prejudice is not required in order to require remand upon the Court's finding of a denial of the right to counsel. On the violation part, though, putting aside prejudice, if it's de novo, do we just basically ask whether we would have granted a continuance, or is there some amount of deference to the IJ? There is some amount of deference to the IJ, certainly. In particular, when reviewing the decision of the BIA, the BIA is deciding, through the lens of an appellate court, whether the immigration judge properly granted or denied a continuance. So certainly the review of the IJ's decision is one that this Court can review de novo. But layered within that, of course, is a certain degree of discretion to the IJ's granting or denial of a continuance. But again, that discretion has to be utilized within the confines of the immigrant's right to counsel, which has competing considerations at play here. So the Court is not just deciding whether in the first instance it would grant or deny a continuance. There is certain latitude that's accorded to the immigration judge. But again, that latitude is cabined by the law that requires that an immigrant be accorded a reasonable time to find counsel. Well, in that regard, it seemed to me important that this case is very different than the two that have been decided previously that are relied upon. In one of those cases, it was a first continuance, whereas here it was the 11th. And in the other case, there was a lawyer just down the hall in another courtroom. And again, nothing similar here. And so do those factors play into the reasonableness of what the IJ did here? Yes, those cases certainly do play into the reasonableness. I would submit that this case actually is closely analogous to each of those. I believe that Your Honor is referring to this Court's decisions in Usubakhanov v. Garland and Hernandez-Gill. In Usubakhanov, that case instructs that being on the brink of obtaining counsel doesn't actually require quite the degree of certainty that I think is maybe intimated by the government's brief. The petitioner's statement there reflected nothing more than a similar potentiality to what we're finding in this case. The representation there was, quote, likely but not certain. No lawyer had actually agreed to represent Mr. Usubakhanov. No lawyer had submitted a notice of appearance. And Mr. Usubakhanov had not even met with his desired counsel at this time. And indeed, as Judge Akuta's dissent pointed out, he had made similar representations before, and yet no counsel had appeared at subsequent hearings. As I understand the facts in that case, which I am not as good at pronouncing, it was actually a first request for a continuance. Is that your recollection as well? My recollection is not that that was the first continuance. It was not the first hearing, certainly, that had taken place in that matter. I'd be happy in my time on rebuttal to inform the Court exactly what number we were on in Usubakhanov's case. But it wasn't the first. And also, this Court's precedents are quite clear that the right to counsel is about more than arithmetic. It's not about one continuance, two continuance, how many months are transpiring. It's about what's reasonable under the circumstances. And the circumstances here are unique for several reasons that I'd like to highlight today. One was his detention, of course, at the height of the COVID pandemic, with no in-person visitation, limited calls and at odd hours to the outside world, viral outbreaks, and rolling lockdowns. And this was truly unthinkable timing, with his first hearing just the day before the national emergency was declared on March 13, 2020. And that, of course, is a factual circumstance that's distinct from any of the cases that are cited in opposition. Second, Mr. Mangubat faced a changed outside world, with many of the programs that had once served indigent immigrants like him suddenly shut down or operating haphazard and skeletal programs. Third, he proceeded with undisputed good faith and diligence, and he had made concrete progress and was continuing to make that progress with the support of Asian Americans advancing justice, which had, in the record, a clear connection to Mr. Mangubat and indeed was representing him with respect to his bond proceedings and also helping him obtain wraparound representation. And fourth, Mr. Mangubat was abandoned at the last minute by his would-be pro bono counsel, counsel that was supposed to be with him on the very same day that IJ required him to proceed pro se. So I'd submit that these particular circumstances in Mr. Mangubat's case warrant a continuance here. Yes, his case is not identical to those that have appeared in this court's precedents. Of course, no two fact patterns are going to be identical, but there are certain factors that required further time in order to make the amount of time to obtain counsel reasonable. So there's one other aspect to this, and that has to do with what your clients said at the time in the hearing. And I don't, just speaking for myself, I don't necessarily agree with the government's view that counsel was waived in a formal sense. But your client did say that proceeding was no problem, I believe was his phrasing. And at another point, he says, okay, Your Honor, I believe you have acknowledged that I am representing myself. So does that at all play into the consideration of whether denial of a continuance was reasonable, even if it's not a formal waiver of counsel? So I would say that there are two separate issues that Your Honor's question raises. One is, of course, whether there was a waiver in the first instance. And I believe at this stage the government is not disputing that Mr. Mangubat did not waive his right to counsel. The second is whether a statement like no problem during the course of proceedings can in some way affect whether the amount of time accorded was reasonable. And we'd say it does not. First of all, that statement was not probative of anything at all. It was a show of respect for authority, nothing more. And if the court goes further into the record, you'll find similar statements by the petitioner, I understand, no problem. It was his manner of speaking and trying to treat the court with appropriate deference. And second, similar statements have been found in this court's jurisprudence not to constitute a waiver and also with rationales that suggest such statements are, again, not probative of anything. I'd like to direct the court to its decision in Mendoza-Misariegos v. Mukasey. There, the petitioner went a step further than Mr. Mangubat, saying, I think I don't deserve an opportunity. Whatever your decision is, I will abide by that. And this court called that statement pitiful and said it did not indicate he believed he was at fault for the five years of repeated continuances there. Rather, his words reflect that he eventually gave in to an authority figure who had berated him for much of the hearing and who had already decided not to grant him a continuance. Mr. Mangubat's statements here are along those lines as well. And deference to the authority of the court isn't the same thing as a waiver. It's also not the same thing as agreeing with the court's determination that no further continuance was necessary. Your Honor also brought up a statement whereby Mr. Mangubat said that the I.J. had acknowledged he was representing himself. That, likewise, was simply an acknowledgment of the I.J.'s decision, not agreement with the I.J.'s decision. He had at several times during that hearing invoked his right to counsel, said that he had counsel that was supposed to be appearing with him. He asked the court for additional time. He was pleading with the court to give him one more chance after his last-minute abandonment by his would-be counsel. Counsel, I have a question for you that I think on a factor that goes to the reasonableness of the denial of continuance in the total circumstance. The question is did the I.J. here ever express any disagreement with or dispute of the statements of Mangubat that he was close to finalizing his retention of counsel for the immigration hearing? The I.J. did not ever dispute Mr. Mangubat's statements. In fact, in the context of his merits proceeding, the court, in fact, found Mr. Mangubat to be a credible witness. If the court has no further questions. I actually wanted to ask about, it seems like you think he did have the pro bono lawyer and then the lawyer backed out. But I was trying to figure that out from the statements in the hearings. And it seems like at the second-to-last hearing, he talks about them not having the contract signed yet. So I wasn't sure that he ever really did lock in the lawyer. Do we know that he did? We don't have concrete evidence in the record one way or another. That said, it is suggested by his statements that he was supposed to have counsel with him. The concreteness of that representation, whether it was ever formalized, is not in the record. But we do know that he was informed by Asian Americans Advancing Justice, which is a reputable legal services organization, that they had located counsel for him. We don't know if they signed a retainer, if that's really what you're getting at. But he had certainly come close, and I think that that is undisputed and clear in the record. Further still, any gaps that are in the record are not things that could be held against Mr. Mangubat. It's really the obligation of the IJ to develop the record in these circumstances, particularly where you have a petitioner proceeding pro se. And the IJ didn't even give Mr. Mangubat much of an opportunity to develop the record for himself. I realize this is a bit after the fact, but eventually a lawyer did file a notice of appeal to the BIA. Was it someone from that organization? It was not someone from that organization. It was substitute counsel. So as Mr. Mangubat made clear, Asian Americans Advancing Justice was continuing to work with him to find replacement counsel. They did, in fact, find replacement counsel. That's the counsel that did appear for him before the BIA. That just wasn't quite in time for the final hearing at which the IJ said essentially game over. If the Court has no further questions. Did you want to reserve your remaining time for rebuttal? I would, thank you, Your Honor. Okay. That's fine then. Thank you. Thank you. So now we'll hear from the government on behalf of Merrick Garland. Thank you. May it please the Court. Dawn Conrad on behalf of the Attorney General. In this case, Petitioner's right to counsel and due process rights were not violated when the immigration judge denied his request for an 11th continuance at the start of his merits hearing. Petitioner had previously received 10 continuances over a period of seven months for several reasons. Even considering that Petitioner was detained and his difficulties contacting pro bono attorneys due to the pandemic, the immigration judge gave him a reasonable and realistic period of time to provide a fair opportunity for Petitioner to seek, speak with, and retain counsel. And that's the standard that the Board looks at in matter of CB. How do we know that it was reasonable? So I agree with you that seven months and this many continuances outside of COVID, if it wasn't 11 o'clock at night or whatever the hours were that he was allowed to make phone calls, would be reasonable. But he had a lot of factors weighing against his ability to use those seven months. And so why was it reasonable in this case? So in this case, the immigration judge, immigration judge Amy Lee, took into account when Mr. Mangabat talked about his difficulties contacting pro bono counsel, which was in June and July 2020. And she granted him continuances in response to those difficulties. As of August 2020, he no longer informs the immigration judge that there are any pandemic related reasons why he cannot find counsel. In fact, is that right? I mean, he says, I don't know that he was still in lockdown himself at that point. But the organization, some of them were closed. I mean, it was still he talks in various points about they didn't get my contract because they're closed because of the pandemic. I mean, I think he was still facing a pandemic. I don't believe there's any instance in the record past August 2020 where he mentions the the the pandemic. He talks about doesn't he when the thing I was just hold on one second. Sorry, I've lost my page. The one where he talks about them not receiving the contract is because the office was closed. I thought because of the pandemic is not. And that's September 10th. He talks about them. They're not having authorization from he. He believes he has counsel, but he's there waiting authorization from the pro bono director. Then I believe. I don't remember there being something about the office being closed. Sorry. But go ahead. That's OK. That's OK. Anyway, he's he's he's clearly able to make progress with finding an attorney because of August. As of August 14th, 2020, he tells the immigration judge he has located an attorney, but is only for his bond proceedings. But he there's a possibility finding an attorney for his entire case. I'm sorry. I think I found what I was thinking of. It was actually August 14th when he says they're in strict compliance of the closure. And so they haven't gotten the contract. That's at least mid-August. OK, well, then after that, he still has another two months. And I don't and I think in September he doesn't tell the court that it's related to a pandemic reason. He says they're awaiting approval from the pro bono director. And then this case is a little different. So on your last point. Yeah. If he says they're winning approval, something he's got someone lined up to represent them. They need a higher level approval. But why wouldn't it be reasonable to wait for that? Well, he still has. That's in September 10th. And the immigration judge notes that when she grants him a continuance for his merits hearing, that if he has an attorney, the attorney can appear at his merits hearing on October 19th. So he still had time to get the approval from the pro bono director at that point. But on October 19th, 2020, he tells the immigration judge he believed he had a law office, but the law office backed out. So there's no longer a mention of it being an issue with waiting for approval. The law office backed out. So at that point, the immigration judge determined it was a reasonable and realistic time period for him to have found an attorney. And the immigration judge was a new immigration judge as of the October 19th, 2020 hearing. But he had familiarized himself with the record of proceedings. And this case is factually different. So these cases, this court reviews on a very factual, specific inquiry for each case. And this case is factually different than Usa Bukhanov, which petitioner tries to claim is similar. Because in Usa Bukhanov, he actually had a tentative agreement. He named the attorney. He named the organization. He said the only reason the attorney wasn't there is they hadn't been able to meet with him with a Russian translator. Because in that case, the petitioner, I believe, was a native Russian speaker. Here we don't have the name of a law office or even the name of an attorney. And to the extent that. Well, he does have a name of a law office, doesn't he? This Asian Americans Advancing Justice LA. It's at least very close to the right name of a law office. Well, he's able to provide. That's the group that was representing him in his bond hearings. And he says that that is they are helping him try to find an attorney for his merits hearing. But as for. I think he's saying they are not his lawyers for the merits hearing. That's correct. He names them, but he says they're not my lawyers for this. That's correct. So they're they're helping him, he says. But he does not name the law office or the attorney that he claims backed out and is no longer going to represent him. So he's not on the verge of representation the way that Ussa Bukhanov, which I'm probably pronouncing incorrectly, I apologize, was. Was this in. I'll try to pronounce it this time. Ussa Bukhanov. I had asked other counsel whether that was the first request for continuance. And I can't seem to lay my hands on it. And I know she was going to. But do you recall the answer to that? I have in my notes that he previously received several continuances of 28 weeks. I don't know if that was always to find an attorney or for other reasons, but I do have that he had other continuances. Thank you. If there were pandemic circumstances, at least until mid-August, should we consider this only really two months to find a lawyer? No, because he. So as of the first hearing in, I think, was March, the immigration judge encourages him to find a counsel, provides him with the list of pro bono and the LOP, the legal organization provider, I think that in his detention center. So he has that time period. I think the court has to consider the entire time period and also the factors that provided him with difficulties during that time period. But he did have that entire time period to look. And he was able to find the attorney for the bond proceeding during that time period. And he may have also, I'm not 100 percent sure, but I think he had an attorney helping him with his maybe post-conviction relief motions that he filed in state court. Are there any further questions? But just to clarify, I think you may have already touched on this. When he did have time available to work on anything while he's in detention, I thought he just had some normal off-calendar hours during the day that were like midnight to 4 a.m. or something like that or another block of time that was not time when you could call a law firm and get anything done. So if I'm right in that, he's sort of impaired by that as an obstacle. What's the significance of that for how much time is reasonable? Well, yes, Your Honor. He did have those difficulties, but he did not have that for the entire seven-month time period. He brings that to the immigration judge's attention, I believe, in June and July 2020. And she considers that in granting him continuances. So he's never denied a continuance when he says, I can't reach anyone. I can't make a phone call. I'm limited in my ability to reach people. When the IJ ultimately denies the final continuance at his merits hearing, his statement is that he had or he believed he had an attorney, and the attorney backed out at the last minute. Yes. Still having trouble understanding the motivation of the IJ here with all the complex proceedings that have occurred as to why the IJ could not see fit to give him some additional time. Well, I think under the facts of this case, the petitioner was detained. Detained dockets do move at a faster pace than a traditional immigration court without a detained docket. And I think at that point, because petitioner did not have really any evidence of a prospect of counsel, unlike in Usabukhanov, the immigration judge, having reviewed the proceedings, decided that he had had a realistic and reasonable time period, and he just wasn't making any progress. And I would also like to note that... Wasn't it unreasonable to think he wasn't making any progress? I mean, don't you have to disbelieve him to think that? I mean, if he's saying he had pro bono counsel lined up, they backed out at the last minute. If the IJ thought he was telling the truth, which I think we have every reason to think they did think that, why isn't that progress? Because basically he had told the IJ sort of a similar thing at the previous hearing, that he almost had counsel and just one more thing needed to be done. And the IJ, even if a petitioner is making good faith efforts to find counsel, and there can be many reasons, you know, a counsel may decline to take a case, not necessarily just pandemic reasons. If the IJ... I'm sorry. If the petitioner does not have to... I'm sorry. The immigration judge does not have to indefinitely continue proceedings with multiple continuances with only the speculative possibility that a petitioner can obtain counsel. It feels a little bit like these continuances were so short that under the circumstances we shouldn't count them all. I'm still a little stuck on that. I mean, I'm not sure why we should view this as a case that had 11 continuances. Well, I will say that's traditional for the detained docket. They rarely give more than two to three weeks a continuance. That is just how the detained courts usually work. That may be, but when we're lining it up with the time to get counsel and what is reasonable, it feels like in this particular circumstance of the pandemic, it doesn't make a lot of sense to count it the same way. Well, my response to that would be that the immigration judge took account of that when she granted him the continuances. When he complained about the pandemic and the pandemic restrictions preventing him from accessing or contacting counsel, she granted him continuances based on that. And all the immigration judge has to find a realistic and reasonable time period to find counsel, and here he did have a realistic and reasonable time period. He found a counsel for his bond proceedings two months before his merits hearing. And he certainly made some progress on that. Yes. Yes. All right. If there's no further questions, thank you. Thank you, counsel. Thank you. Thank you, Your Honors. There's much to discuss, so I'll try to be relatively quick. First, to address Judge Graber's question, which I know has been partially addressed already. In Mr. Usubakunov's case, he received the pro bono list on November 2017, had a hearing that was continued to December 2017, again, another one to January, then February, then March, then April, and then May. So he had received several continuances there in a manner that I would say is fairly analogous to this case. My counsel on the other side has mentioned that Mr. Mangabat did not reference the pandemic after at least August. We do know, at least from this court's decision and Roman B. Wolfe, for example, that there was a COVID outbreak in Adelanto in September of 2020, which was immediately prior to Mr. Mangabat's final hearing. Therefore, it is clear that issues respecting the pandemic were ongoing at Adelanto during this entire period. In addition, counsel has mentioned that Judge Amy Lee had considered several of the pandemic conditions. Judge Marcus, who is the judge who replaced her for the final hearing, did not ask or give Mr. Mangabat the opportunity to talk about the pandemic even once during the course of that hearing, and that may be why we find no discussion of it at that point. I'd also like to discuss the number of continuances that Mr. Mangabat received. Several of the continuances, as mentioned, were for reasons other than trying to find counsel. If the court properly discounts those continuances, a stretch at the beginning and also a stretch in August to fill out his asylum application, that would cut off a good three months of the chunk that we're talking about here, even setting aside the pandemic-related issues. The first continuance in particular I think is interesting. If the court looks at the record, page 121 to 122 and 128, the immigration judge provided a continuance both for Mr. Mangabat to try to figure out what's happening with his criminal case to seek post-conviction relief and also for the government to figure out what the actual allegations and charges should be in this case, given the procedural oddities here. And certainly continuance that's provided for the government to get its case together cannot be held against the petitioner. I recognize that I'm out of time. I certainly would be happy to continue, but also see that I have no further time. I'd like to close by asking the court to grant the petition for review and to remand to the agency for new proceedings so that Mr. Mangabat, assisted by counsel, can have a fair shot at relief in his case. Okay. Thank you. I have no further questions. I want to thank both counsel for their spirited advocacy. It's a big help to the court, and we appreciate it. So you've both done an excellent job presenting your cases. And now I guess we'll have to leave some work for the panel to sort through this. If I might request the chance also to thank Pro Bono counsel for taking on a case of this sort. It's very helpful to the court when counsel take cases pro bono, and we appreciate that. Yes. We thank you. The panel will now close.
judges: GRABER, GOULD, FRIEDLAND